Argued February 18; affirmed March 31, 1942

# KERN *v.* BELL

(123 P. (2d) 979)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Clifford G. Schneider* and *B. G. Skulason,* both of Portland, for appellant.

*A. E. Clark,* of Portland (W. G. Hare, of Hillsboro, and Jay Bowerman and John H. Hall, both of Portland, on the brief), for respondent.

BELT, J. On July 7, 1939, the Michigan-Oregon Logging Company, a corporation, entered into a contract to sell to the defendant Bell and Wiest-Scritsmier Logging Company, a corporation, 1,360 acres of timber-

land in Washington county, Oregon. The purchase price was not to be paid in a lump sum but on the stumpage basis—the vendor to receive a certain stipulated price per thousand feet as the timber was cut and removed from the land. Under the terms of the contract, when the vendees entered upon any government subdivision—designated in the contract as 40 acres—for the purpose of cutting the timber thereon, the cruiser or field man, W. F. Campbell, would estimate the amount of timber on such 40-acre tract and the vendees would pay on the basis of such estimate. The vendor would thereupon release or convey such subdivision to the vendees. If the timber cut exceeded or was lower than such estimate, an adjustment of the sum paid was to be made between the parties. $5,000 of the purchase price was paid in cash by the defendant Bell as security for performance of the contract and was to be applied on the last payment of the purchase price. The contract was to be completely performed and the remainder of the purchase price paid, in all events, not later than September 1, 1943.

It was expressly provided in the contract that ''the vendor makes no representations, warranties or guaranties either as to the quality or quantity of timber or other forest products on said property or as to the logging conditions appertaining thereto. *Vendees expressly admit that vendees have examined the said property and have accepted the same as it is and where it is.*'' (Italics ours.)

On the same day, July 7, 1939, that the above contract was executed, the defendant Bell and Wiest-Scritsmier Logging Company entered into a contract wherein Bell agreed to log the timber referred to in the Michigan-Oregon Logging Company contract. It is not necessary to state the details of the contract between Bell and

the Wiest-Scritsmier Logging Company because it was cancelled by virtue of a later contract between the same parties. Suffice it to say, Bell, pursuant to the terms of his contract, commenced logging operations in August 1939, and cut approximately 6,000,000 feet of timber before making the new contract with Wiest-Scritsmier Logging Company on March 1, 1940, which contract is the basis of plaintiff's action. The Michigan-Oregon Logging Company is not involved herein, as payments have been made to it for the timber cut.

Under the terms of the contract executed on March 1, 1940, the agreement made between the parties thereto on July 7, 1939, was cancelled. It was further provided, so far as material herein, that the Wiest-Scritsmier Logging Company would, in consideration of the payment to it by Bell of the sum of $30,000, transfer and convey to him its interest in the Michigan-Oregon Logging Company contract. Bell was to make the payments to the Michigan-Oregon Logging Company and to save Wiest-Scritsmier Logging Company harmless from any loss or damage arising out of said contract. The seller, Wiest-Scritsmier Company, further agreed to sell and convey to Bell its interest in the Wedeburg Lumber Company. "Seller" also sold and transferred to Bell certain "logging machinery, tools and equipment, logging spur and rights of way owned by the seller and situate at or near Wedeburg" in Washington county near timber holdings of the Michigan-Oregon Logging Company. For the property thus sold and conveyed to him, Bell agreed to pay the purchase price as follows:

"Beginning on the 15th day of April, 1940, the BUYER covenants and agrees to pay unto the SELLER ONE DOLLAR ($1.00) for each thousand feet of logs cut and removed by him up to the 31st day of March, 1940, from the timber particularly described in the

aforesaid MICHIGAN-OREGON LOGGING COMPANY contract, and any other timber purchased by him and logged in connection with the same operation; and

"Upon the 15th day of each month thereafter the BUYER covenants and agrees to pay unto the SELLER ONE DOLLAR ($1.00) per thousand feet for each thousand feet of timber cut and removed by him from said lands during the preceding month; and to continue to make said payments upon the 15th day of each month until said sum of THIRTY THOUSAND DOLLARS ($30,000.00) shall be paid in full. It is particularly understood and agreed, however, that in the event the buyer shall fail to cut and remove two million feet of timber during any month, he shall then make payment unto the SELLER at the rate of $1.25 per thousand feet for each thousand feet of timber cut and removed by him from said premises during any month he shall fail to cut and remove said two million feet."

It is stipulated by counsel that defendant cut and removed from the land purchased from Michigan-Oregon Logging Company 15,495,632 feet of timber between and including March 1940 and December 1940. There is no dispute as to the payments made by defendant under the contract—the last being on April 15, 1940, in the sum of $2,603.31. Upon default in payments thereafter, the plaintiff, as assignee of Wiest-Scritsmier Logging Company, commenced action to recover payments accrued and owing under the contract, aggregating the sum of $16,152.34.

Defendant, in answer to the complaint and "by way of a further and affirmative equitable defense" thereto, alleged in substance that he was induced to enter into the contract with the Michigan-Oregon Logging Company and the one with plaintiff's assignor on March 1, 1940, through the false and fraudulent

representations of F. S. Scritsmier, president of the Wiest-Scritsmier Logging Company, that:

(1) There were more than 60,000,000 feet of merchantable timber on the land described in the original contract;

(2) Such timber "could be logged and taken out in the customary manner over a certain road under the control of Wiest-Scritsmier Company, and which road and right of way therefor was the property of the plaintiff, and for the use of which the plaintiff's assignor had a right under a contract with the plaintiff;

(3) Said timber could be "logged and taken out over certain other proposed roads which the said Scritsmier had surveyed and which he represented as being feasible routes for the transportation of said timber."

Defendant alleges that the above representations are false in that:

(1) There were not to exceed 33,000,000 feet of merchantable timber on the land;

(2) The said road "was not owned by the plaintiff and he had no control over the same and neither he nor his assignor had any right or authority to contract with the defendant for the use thereof; and

(3) "The said surveys for other roads for getting out said timber were erroneous and impracticable and roads could not in fact be built in accordance with such surveys because of the nature of the terrain of said timber lands."

On trial in the circuit court the charge of fraud concerning the title and right of control over the above mentioned road was expressly abandoned. It was conceded that Wiest-Scritsmier Company had, by virtue of its contractual relations with plaintiff, the right of control over the road for such time as would enable the defendant to use it for logging purposes under the terms of his contract.

Defendant alleges:

"The defendant has used said road in connection with said operations, and is still using the same, and the same is practical and satisfactory as far as it goes. But he has not been able to lay out roads in accordance with the said surveys made by said Scritsmier, and in order to take out a large portion of said timber the defendant has been obliged, at great additional and extra expense, not contemplated by the parties at the time said contracts were entered into, to install and employ donkeys and high lines, without which said timber could not be logged; and because of the impracticability of taking out said timber along the routes surveyed and contemplated by the parties he has been obliged to sell and dispose of fourteen forties of said timber at a heavy loss. As a result of the facts above stated the defendant will suffer a great loss in said operations, the amount of which cannot be even approximately ascertained at this time and cannot be known until said operation is completed.

"Previous to said notice and threat of litigation the defendant ascertained that neither the plaintiff nor his assignor had title to said road and that they never had any authority to contract relative to the same with the defendant. Thereupon, under advice of counsel, the defendant earmarked and set apart all money which might come due to the plaintiff's assignor as a result of said operation and ever since has so set the same apart, and he holds the same in readiness for disbursement pursuant to the order of the court herein."

Defendant further alleges in substance that on account of the deficiency in the quantity of the timber and the "impracticability of said surveyed routes for other roads" (referring to roads other than the trunk road) he will sustain irreparable loss and damage, the amount of which cannot be determined until logging operations are completed.

Defendant therefore invokes the aid of equity to hold the law action in abeyance and to settle and adjust "the rights and equities of the parties" after the completion of the operations.

The circuit court tried the case as if in equity and entered judgment in favor of the plaintiff for the amount due on the contract of purchase.

Defendant appeals.

After careful consideration of the voluminous record in this case, we are convinced that there is no merit in the charge of fraud. The defendant Bell, who has had twenty years' experience in sawmill and logging operations, was not misled or deceived by any representation of Scritsmier in this transaction. True, Bell is a man of limited education, but college degrees are not essential to successful logging operations. Bell knew timber and no doubt had his own ideas about the best method of bringing logs out of the woods. We have no hesitancy in saying that the parties involved herein were dealing at arm's length.

Bell, accompanied by his associates in the timber business, made three inspections of the timberland before executing the contracts of July 7, 1939. There is no evidence of any effort to deprive him of the opportunity fully to advise himself as to the quantity of timber and the character of the land in question. What possible motive could Scritsmier have had for misrepresenting the facts to Bell on July 7, 1939? Was not Wiest-Scritsmier Logging Company equally interested with Bell in their joint enterprise? It cannot reasonably be contended that at such time the parties had in contemplation the contract of March 1, 1940, upon which plaintiff's action is based.

Assuming that Bell was induced through fraudulent representations to execute the contract with the

Michigan-Oregon Logging Company in July 1939, will it be argued that, in spite of having carried on logging operations for several months thereafter, he was still misled and deceived by such representations when he executed the contract in March 1940? Was Bell still in ignorance as to the quantity of the timber and the feasibility of logging the same?

The statement made by Scritsmier as to the quantity of the timber was an expression of opinion. It was not made as a statement of fact, nor do we think Bell accepted it as such. Wiest-Scritsmier Logging Company had never made any cruise of the timber and Bell was so advised. Bell alleged that there were only 33,000,000 feet. However, the evidence introduced by defendant shows approximately 47,000,000 feet.

There was no reason for Bell's being deceived by any representations of Scritsmier concerning the feasibility of bringing the timber out over certain logging roads leading to the trunk road. Bell knew, or at least had the opportunity to know, the terrain of the country. Contour maps were available for his inspection. He had previously logged—on a smaller scale—in similar territory near his mill at Sandy, Oregon, and elsewhere. Did he not know that the location of a logging road was largely a matter of opinion and one upon which successful operators might well disagree?

Bell said he stopped making payments under the contract when he learned from the plaintiff that Wiest-Scritsmier Logging Company had no right of control over the trunk road necessary to his logging operations. Yet the charge of fraud in reference to such matter was abandoned on trial!

Scritsmier did not seek out the defendant. It was Bell who desired to make a new contract. The contract

was executed in the law office of Mr. W. G. Hare at Hillsboro, Bell being represented by his counsel, Mr. Clifford G. Schneider. The evidence is undisputed that at such time the quantity of timber was not discussed. Bell's chief concern seemed to be the right of Wiest-Scritsmier to contract in reference to the use of the trunk road constructed by plaintiff.

Has defendant Bell's conduct been such as to justify the aid of equity? He sold "fourteen forties" to C. E. Powell, claiming that it was impracticable for him to log it out of the canyon. Powell operated at a lower elevation. Competent loggers testified, however, that it was feasible to build logging roads having 2½ per cent grade into such timber. Powell has cut approximately 15,000,000 feet. Bell paid the Michigan-Oregon Logging Company but no payment has been made to Wiest-Scritsmier Logging Company. The contract between Bell and Wiest-Scritsmier Company provided:

"This contract is personal between the parties thereto, and the BUYER shall have no right to transfer this contract, or any interest therein, without having first obtained the written consent of the SELLER."

Wiest-Scritsmier Logging Company never consented to the sale of timber to Powell.

In defendant's answer it is alleged that he "earmarked and set apart all money which might come due to the plaintiff's assignor as a result of said operation and ever since has so set the same apart, and he holds the same in readiness for disbursement pursuant to the order of the court herein." On trial, however, it developed that the money was not set apart and earmarked. Indeed, the evasion and confusion of the defendant when questioned as to such phase of the case was so apparent that his counsel came to his rescue

by admitting that the allegations in reference to earmarking the funds was made through inadvertence and mistake. We are still at a loss to understand how any person could be honestly mistaken as to whether or not he had earmarked such funds.

Bell was not induced to enter into the contract by reason of any false representations. He acted on his own judgment after having fully advised himself as to the facts. It was only after action was commenced to recover on the contract that fraud was asserted.

The decree is affirmed.